**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KRISTIN GAMBELL, RAMON ANGELES, and
RICK ZAMBRANO individually and on behalf of
all others similarly situated,

                 Plaintiffs,

vs.

BUTTERFIELD MARKET AND CATERING,
ALAN OBSATZ, EVAN OBSATZ, and JOELLE
OBSATZ,

                 Defendants.

Civil Action No. 1:19-cv-5058

**CLASS AND COLLECTIVE ACTION**
**COMPLAINT**

**JURY TRIAL DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by their attorneys, The

Law Office of Christopher Q. Davis, PLLC, allege, upon personal knowledge and upon

information and belief as to other matters, as follows:

## NATURE OF ACTION

1.    This is a collective and class action brought by Lead and Putative Class

Representative Plaintiffs Kristin Gambell, Ramon Angeles, and Rick Zambrano (together, the

"Representative Plaintiffs" or "Lead Plaintiffs"), any other individuals who file a consent to join

form with the Clerk of the Court (herein as the "Defendants") as non-exempt hourly line catering

staff (Assistant Managers, Set Up/Breakdown, Cashiers, Baristas, Bartenders, Servers, Inventory

Representatives, Runners, Food the "Opt-Ins"), and all putative plaintiffs (collectively, the

"Plaintiffs"), on their own behalf and on behalf of the putative Collective Class and putative Rule

23 class identified below.  Plaintiffs and the putative Class Members and putative Collective

Members were or are employed by Defendants Butterfield Market and Catering ("Butterfield" or "Corporate Defendant"), Alan Obsatz, Evan Obsatz, and Joelle Obstaz (together the "Individual Defendants", and the Individual Defendants together with the Corporate Defendant are referred to Preparation and Bussers), and were denied overtime premium compensation by requiring they work extended weekly hours and were paid at a straight-time rate for hours over forty in a week. The putative Class and Collective are similarly situated to the Plaintiffs under Federal Rule of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and have suffered the same violations of New York Labor Law ("NYLL") §195(1) and (3) pursuant to Defendant's common policies and practices.

2.      The Collective is made of all persons who are or have been employed by Defendants any time as line catering staff within the three years prior to this action's filing date through the date of the final disposition of this action (the "Collective Period") and who were subject to Defendants' unlawful policy of failing to pay lawful overtime premiums for all hours worked over 40 in a given workweek, and failing to keep accurate records of hours Plaintiffs actually worked.

3.      The Class is made up of all persons who are or have been employed by Defendant as line catering staff, and any successors in interest within the period of six years prior to this action's filing date through the date of the final disposition of this action (the "Class Period") and who were subject to Defendant's unlawful policy and/or practice of failing to pay lawful overtime premiums for all hours worked over 40 in a given workweek, and Defendants' unlawful practice of failing to keep accurate records of hours Plaintiffs actually worked and failing to provide Plaintiffs with accurate wage notices and wage statements.

4. Plaintiffs seek relief for the Class pursuant to the applicable provisions of the NYLL and Collective under the FLSA, to remedy the Defendant's failure to pay all wages due.

**<u>PARTIES</u>**

5. Individual and Representative Plaintiff Kristin Gambell is a former member of Defendants' hourly line catering staff (Assistant Manager) presently and at all relevant times resided in New York, New York. She began her employment with Defendants in March 2013 and was terminated on January 4, 2019.

6. Individual and Representative Plaintiff Ramon Angeles is a former member of Defendants' hourly line catering staff (Assistant Manager and, later, Director of Concessions) and presently and at all relevant times resided in New York, New York. He began his employment with Defendants in 2010 and quit his position on January 7, 2019.

7. Individual and Representative Plaintiff Rick Zambrano is a former member of Defendants' hourly line catering staff (Barista, then Set-Up Crew and Bartender) and at all relevant times resided in New York, New York. He began his employment with Defendants in February 2014 and quit his position in April 2019.

8. Corporate Defendant Butterfield Market and Catering is a New York corporation with its principal places of business at 1114 Lexington Avenue, New York, NY 10075 and 346 East 92nd Street, New York NY 10128.

9. At all relevant times, Defendants have met the definition of Plaintiffs' "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL §190(3).

10. At all times hereinafter mentioned, Defendants employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials have moved in or produced for

commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) &(s).

11.     Defendants' gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

## JURISDICTION & VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  The Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332.

13.     In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 207 et seq.

14.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

15.     Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because the wage violations which give rise to Plaintiffs' claims occurred in this District.

16.     This Court has personal jurisdiction over Defendants because they reside in and routinely transact business in New York.

## WAGE AND HOUR COLLECTIVE CLASS
## AND CLASS ACTION FACTUAL ALLEGATIONS

17.     Butterfield is a local market and catering company with operations in the New York metropolitan area.

18.     Butterfield originated as a local food market and later started offering full-service catering for corporate events, luncheons, holiday, birthday and cocktail parties; delivering

breakfast and lunch spreads to offices; as well as creating "pop-up cafes" and dining and bar experiences at large corporate exhibitions in New York City.

19.    Butterfield utilizes in-house line catering staff to provide all catering services, including but not limited to tracking inventory and deliveries, restocking supplies, manning registers, creating daily reports, heavy lifting while building and breaking down serving stations, tracking money and transaction with customers, serving drinks, organizing boxes and goods, transporting items from one location to another, preparing food and drinks, including coffee and alcoholic beverages, bussing tables, and cleaning up after all events.

20.    Defendants have a principal place of business in New York City, New York, through which Butterfield provides these services to residential and commercial customers within the New York City Metropolitan area.

21.    Upon information and belief, Defendants have employed over 40 in-house employees within the Class Period, all of whom are paid hourly.

**<u>Defendants' Unlawful "Off the Clock" Practice of Forcing Plaintiffs to Work Over 40 Hours Per Week with No Overtime Pay.</u>**

22.    In order to provide Butterfield's customers with adequate and around-the-clock service during major catering events, Defendants require non-exempt hourly line catering staff employees to work from early morning to late night, which includes setting up for each event, managing all parts of the event (cooking, serving, hosting), and cleaning up after each event is complete. To meet demanding productivity requirements each workday, Plaintiffs were forced to work in excess of 40 hours per week in order to avoid disciplinary action.  As a result, Plaintiffs regularly worked "off-the-clock" after their allotted regular work schedule.

23.    At all times during the class and collective class period, all line catering staff were paid hourly.

24.     Plaintiffs were forced to work several positions other than listed on the schedule, and worked in excess of 40 hours that week.  Plaintiffs were paid at a straight time rate for all hours over forty and not at a rate of time and one half of their regular hourly rate.

25.     For example, Plaintiff Rick Zambrano regularly worked 15 hours per day during multi-day catering events. Events hosted by Defendants regularly lasted 5 days or more, during which time Mr. Zambrano worked over 100 hours during a week's time. He was paid at a straight-time rate of $15.00 per hours for all hours worked. During several events, Defendants paid him only in cash with no payroll records of his work created. Defendants did not give wage notices to Plaintiffs.

26.     For example, the week ending March 11, 2018, Plaintiff Rick Zambrano's Payroll Report records showed that he worked 77.5 hours total: 40 hours "regular" and 37 hours and 30 minutes of "overtime." As seen in Defendants' payroll records, all 77.5 hours were paid at a straight-time rate of $15 .00 per hour.

27.     For example, the week ending March 27, 2018, Plaintiff Rick Zambrano's Payroll Report records showed that he worked 66.25 hours total: 40 hours "regular" and 26 hours and 15 minutes of "overtime." As seen in Defendants' payroll records, all 66.25 hours were paid at a straight-time rate of $15 .00 per hour.

28.     For example, the week ending April 8, 2018, Plaintiff Rick Zambrano's Payroll Report records showed that he worked 60.25 hours total: 40 hours "regular" and 20 hours and 15 minutes of "overtime." As seen in Defendants' payroll records, all 60.25 hours were paid at a straight-time rate of $15 .00 per hour.

29.     The week ending April 8, 2018, Plaintiff Kristin Gambell's Payroll Report records showed that she worked 98 hours total: 40 hours "regular" and 58 hours of "overtime." As seen in Defendants' payroll records, all 98 hours were paid at a straight-time rate of $25 .00 per hour.

30.     The week ending April 23, 2018, Plaintiff Kristin Gambell's Payroll Report records showed that she worked 79 hours total: 40 hours "regular" and 39 hours of "overtime." As seen in Defendants' payroll records, all 79 hours were paid at a straight-time rate of $25 .00 per hour.

31.     The week ending May 5, 2018, Plaintiff Kristin Gambell's Payroll Report records showed that she worked 92.75 hours total: 40 hours "regular" and 52 hours and 45 minutes of "overtime." As seen in Defendants' payroll records, all 92.75 hours were paid at a straight-time rate of $25 .00 per hour.

32.     The week ending June 11, 2018, Plaintiff Kristin Gambell's Payroll Report records showed that she worked 69.5 hours total: 40 hours "regular" and 29 hours and 30 minutes of "overtime." As seen in Defendants' payroll records, all 69.5 hours were paid at a straight-time rate of $25 .00 per hour.

33.     For example, the week ending September 18, 2018, Plaintiff Kristin Gambell's Payroll Report records showed that she worked 43.5 hours total: 40 hours "regular" and 3 hours and 30 minutes of "overtime." As seen in Defendants' payroll records, all 43.5 hours were paid at a straight-time rate of $25 .00 per hour.

34.     The week ending October 29, 2018, Plaintiff Kristin Gambell's Payroll Report records showed that she worked 44.5 hours total: 40 hours "regular" and 4 hours and 30 minutes of "overtime." As seen in Defendants' payroll records, all 44.5 hours were paid at a straight-time rate of $25 .00 per hour.

35.     For example, the week ending March 11, 2018, Plaintiff Ramon Angeles' Payroll Report records showed that he worked 110.75 hours total: 40 hours "regular" and 70 hours and 45 minutes of "overtime." As seen in Defendants' payroll records, all 110.75 hours were paid at a straight-time rate of $35 .00 per hour.

36.     For example, the week ending April 8, 2018, Plaintiff Ramon Angeles' Payroll Report records showed that he worked 98 hours total: 40 hours "regular" and 58 hours of "overtime." As seen in Defendants' payroll records, all 98 hours were paid at a straight-time rate of $35 .00 per hour.

37.     For example, the week ending April 23, 2018, Plaintiff Ramon Angeles' Payroll Report records showed that he worked 85 hours total: 40 hours "regular" and 45 hours of "overtime." As seen in Defendants' payroll records, all 85 hours were paid at a straight-time rate of $35 .00 per hour.

38.     The week ending May 5, 2018, Plaintiff Ramon Angeles' Payroll Report records showed that he worked 91.75 hours total: 40 hours "regular" and 51 hours and 45 minutes of "overtime." As seen in Defendants' payroll records, all 91.75 hours were paid at a straight-time rate of $35 .00 per hour.

39.     The week ending June 11, 2018, Plaintiff Ramon Angeles' Payroll Report records showed that he worked 70.5 hours total: 40 hours "regular" and 30 hours and 30 minutes of "overtime." As seen in Defendants' payroll records, all 70.5 hours were paid at a straight-time rate of $35 .00 per hour.

40.     The week ending September 18, 2018, Plaintiff Ramon Angeles' Payroll Report records showed that he worked 47.5 hours total: 40 hours "regular" and 7 hours and 30 minutes of

"overtime." As seen in Defendants' payroll records, all 47.5 hours were paid at a straight-time rate of $25 .00 per hour.

41.     The week ending October 29, 2018, Plaintiff Ramon Angeles' Payroll Report records showed that he worked 45.5 hours total: 40 hours "regular" and 5 hours and 30 minutes of "overtime." As seen in Defendants' payroll records, all 45.5 hours were paid at a straight-time rate of $25 .00 per hour.

42.     The week ending April 7, 2018, non-exempt employee Greg Martin's Payroll Report records showed that he worked 49.5 hours total: 40 hours "regular" and 9 hours and 30 minutes of "overtime." As seen in Defendants' payroll records, all 49.5 hours were paid at a straight-time rate of $20.00 per hour.

43.     The week ending April 21, 2018, non-exempt employee Greg Martin's Payroll Report records showed that he worked 53.25 hours total: 40 hours "regular" and 13 hours and 15 minutes of "overtime." As seen in Defendants' payroll records, all 53.25 hours were paid at a straight-time rate of $20.00 per hour.

44.     The week ending June 11, 2018, non-exempt employee Hector Tapia's Payroll Report records showed that he worked 67.25 hours total: 40 hours "regular" and 27 hours and 15 minutes of "overtime." As seen in Defendants' payroll records, all 67.25 hours were paid at a straight-time rate of $15.00 per hour.

45.     The week ending September 18, 2018, non-exempt employee Hector Tapia's Payroll Report records showed that he worked 44.75 hours total: 40 hours "regular" and 4 hours and 45 minutes of "overtime." As seen in Defendants' payroll records, all 44.75 hours were paid at a straight-time rate of $15.00 per hour.

46.     The week ending April 23, 2018, non-exempt employee Wesley Noonan's Payroll Report records showed that he worked 68.75 hours total: 40 hours "regular" and 28 hours and 45 minutes of "overtime." As seen in Defendants' payroll records, all 68.75 hours were paid at a straight-time rate of $15.00 per hour.

47.     The week ending June 11, 2018, non-exempt employee Wesley Noonan's Payroll Report records showed that he worked 64.25 hours total: 40 hours "regular" and 24 hours and 15 minutes of "overtime." As seen in Defendants' payroll records, all 64.25 hours were paid at a straight-time rate of $15.00 per hour.

48.     The week ending July 28, 2018, non-exempt employee Priscilla Garcia's Payroll Report records showed that she worked 45.25 hours total: 40 hours "regular" and 5 hours and 15 minutes of "overtime." As seen in Defendants' payroll records, all 45.25 hours were paid at a straight-time rate of $15.00 per hour.

49.     The week ending April 23, 2018, non-exempt employee Jack Courtney's Payroll Report records showed that he worked 72 hours total: 40 hours "regular" and 32 hours of "overtime." As seen in Defendants' payroll records, all 72 hours were paid at a straight-time rate of $15 .00 per hour.

50.     The week ending October 29, 2018, non-exempt employee Jack Courtney's Payroll Report records showed that he worked 51.5 hours total: 40 hours "regular" and 11 hours and 30 minutes of "overtime." As seen in Defendants' payroll records, all 51.5 hours were paid at a straight-time rate of $15.00 per hour.

51.     The week ending April 23, 2018, non-exempt employee Andrei Petrov's Payroll Report records showed that he worked 52.5 hours total: 40 hours "regular" and 12 hours and 30

minutes of "overtime." As seen in Defendants' payroll records, all 52.5 hours were paid at a straight-time rate of $15.00 per hour.

52.     The week ending April 23, 2018, non-exempt employee Angelica Flores' Payroll Report records showed that she worked 45.25 hours total: 40 hours "regular" and 5 hours and 15 minutes of "overtime." As seen in Defendants' payroll records, all 45.25 hours were paid at a straight-time rate of $15.00 per hour.

53.     The week ending April 23, 2018, non-exempt employee Eric Fitzpatrick's Payroll Report records showed that he worked 65.5 hours total: 40 hours "regular" and 25 hours and 30 minutes of "overtime." As seen in Defendants' payroll records, all 65.5 hours were paid at a straight-time rate of $20.00 per hour.

54.     The week ending April 23, 2018, non-exempt employee Francisco Nunez' Payroll Report records showed that he worked 64.75 hours total: 40 hours "regular" and 24 hours and 45 minutes of "overtime." As seen in Defendants' payroll records, all 64.75 hours were paid at a straight-time rate of $15.00 per hour.

55.     The week ending May 5, 2018, non-exempt employee Francisco Nunez' Payroll Report records showed that he worked 72.75 hours total: 40 hours "regular" and 32 hours and 45 minutes of "overtime." As seen in Defendants' payroll records, all 72.75 hours were paid at a straight-time rate of $17.00 per hour.

56.     The week ending April 23, 2018, non-exempt employee Jessenia Aguillera's Payroll Report records showed that she worked 62.15 hours total: 40 hours "regular" and 22 hours and 9 minutes of "overtime." As seen in Defendants' payroll records, all 62.15 hours were paid at a straight-time rate of $17.00 per hour.

**Defendants' Unlawful Failure to Provide Plaintiffs with Wage Notices and Accurate Wage Statements.**

57.     Defendants consistently failed to provide Plaintiffs with wage notices at the beginning of each individual's employment. For example, when Plaintiff Rick Zambrano was hired in 2014, he was given no contracts, no notice of his employment status, and no paperwork detailing his hourly wage expectations.

58.     In addition to the aforementioned catering events listed in the payroll, Defendants required Plaintiffs to work as line-catering staff during several events, for which there is no payroll record.

59.     Although events regularly required more than 40 hours a week worked per employee, Plaintiffs were paid at a straight-time rate for all hours worked. Wage payments were made in cash and given by Defendants' managers in envelopes at the end of each day.

60.     For example, during the week ending November 9, 2018, Plaintiffs Ramon Angeles and Kristin Gambell were required to work positions other than listed on the schedule for an extended period far longer than the requested 40 hours. When Plaintiffs complained to Defendants' Director, Chris Deluna, he did not acknowledge the additional wage payments owed.

61.     As a result of Defendants' failure to maintain accurate payroll records that reflect that actual amount of overtime hours that Plaintiffs worked, Defendants failed to furnish Plaintiffs and members of the Class with accurate and/or complete wage statements on each payday, that included the total hours worked each week and the full amount of lawful overtime wages earned during the pay period.

## FLSA COLLECTIVE ACTION ALLEGATIONS

62.     Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

63.     Defendants employed Plaintiffs during the Collective Period.

64.     Defendants classified Plaintiffs and Members of the Collective as nonexempt for the purposes of the FLSA.

65.     Upon information and belief, there are approximately more than 40 current and former employees who are similarly situated to Plaintiffs as hourly line catering staff and who were denied lawful overtime compensation.

66.     The Lead Plaintiffs represent other line catering staff and are acting on behalf of Defendants' current and former line catering staff member's interests as well as their own interests in bringing this action.

67.     At all times during the Collective Period, Defendants, as a matter of common policy and/or practice, have not paid Plaintiffs lawful overtime premiums for all hours worked in excess of 40 hours in a work week.

68.     Plaintiffs seek to proceed as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of themselves and the following class of persons:

**Collective Class:**      All individuals employed by Defendants in the three years preceding the filing date of this Complaint as non-exempt hourly line catering staff employees who were paid an unlawful straight time wage for hours over forty, including all assistant managers, directors, set up/breakdown employees, cashiers, baristas, bartenders, servers, inventory representatives, runners, food preparation employees, bussers, or similar titles at any point during the Collective Period based on the practices alleged herein.

69.     As such, the Named Plaintiffs and the Collective suffered damages for unpaid earned overtime wages under the FLSA in each of the weeks they worked during the Collective Period.

70.     Defendants were aware or should have been aware that the law required it to pay non-exempt employees, including Plaintiffs and the Collective, an overtime premium of 1 and ½

times their regular rate of pay for all work-hours Defendants suffered or permitted them to work in excess of 40 per workweek.

71.    Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective.

72.    Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the Collective, and as such, notice should be sent to the Collective.

73.    There are numerous similarly situated current and former employees of Defendants who were subject to the aforementioned policies in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.

74.    Those similarly situated employees are known to the Defendants and are readily identifiable through Defendants' records.

**FEDERAL RULE OF CIVIL PROCEDURE
RULE 23 NEW YORK CLASS ALLEGATIONS**

75.    Plaintiffs incorporate by reference all of the factual allegations made in the preceding paragraphs.

76.    Plaintiffs seek to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined classes:

> **Proposed Class:**    All individuals employed by Defendants as non-exempt hourly line catering staff employees who were paid an unlawful straight time wage for hours over forty, including all assistant managers, directors, set up/breakdown employees, cashiers, baristas, bartenders, servers, inventory representatives, runners, food preparation employees, bussers or similar titles, at any point during the Class Period based on the practices alleged herein.

77.    Specifically, Plaintiffs' Class is further defined as involving: (i) claims for unpaid overtime compensation for Defendants' practice of unlawfully failing to pay lawful overtime

premiums for all hours worked over 40 in a workweek, which they knowingly suffered and permitted, and (ii) claims for wage statement and wage notice violations for Defendants' failure to provide Plaintiffs' with accurate wage statements on each payday that include the information required by NYLL §195(3), including the correct number of hours worked during the pay period, and failure to provide wage notices at the start of Plaintiffs employment as required by NYLL § 195(1).

78.     Defendants have violated NYCRR 142-2.2 and NYLL §§ 191, 193 by failing to pay Plaintiffs and the putative class at least one and one-half times the New York state minimum wage for all hours worked over 40 during the Class Period pursuant to the same illegal practices and policies alleged above.

79.     Numerosity:   The Proposed Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Class Period, Defendants employed over 40 people who satisfy the definition of the Proposed Class.

80.     Typicality:    Plaintiffs' claims are typical of those of the Proposed Class.  The Representative Plaintiffs are informed and believe that, like other members of the line catering staff, the Class Members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages, failure to keep adequate records and failure to furnish accurate wage statements.

81.     Superiority:    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

82.     Adequacy:    The Representative Plaintiffs will fairly and adequately protect the interests of the Proposed Class and have retained counsel experienced in complex FLSA and NYLL class and collective action litigation.

83. Commonality: Common questions of law and fact exist to all members of the Proposed Class and predominate over any questions solely affecting individual members of the Proposed Class, including but not limited to:

a. Whether Defendants unlawfully failed to pay lawful overtime premiums for all hours worked over 40 in a workweek for those violations stated above;

b. Whether those violations were pursuant to a common policy or practice applicable to all class members;

c. Whether Defendants furnished class members with accurate wage statements on each payday containing the information required by NYLL § 195(3);

d. Whether Defendants furnished class members with accurate wage notices at the start of their employment containing the information required by NYLL § 195(1);

e. Whether Defendants kept and maintained records with respect to each hour worked by Plaintiffs and the Proposed Class;

f. Whether those violations were pursuant to a common policy or practice applicable to all class members;

g. Whether Defendants employed Plaintiffs and the Proposed Class within the meaning of New York law;

h. The proper measure of damages sustained by the Proposed Class; and

i. Whether Defendants' actions were "willful."

84. The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive

of the interest of other individuals not party to this action, impeding their ability to protect their interests.

85. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Proposed Class predominate over any questions affecting only individual members of the Proposed Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the Proposed Class the wages to which they are entitled. The damages suffered by the individual Proposed Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

86. Plaintiffs intend to send notice to all members of the Proposed Class to the extent required by Rule 23. The names and addresses of the Proposed Class are available from Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Unlawful Failure to Pay Overtime Compensation under the Fair Labor Standards Act)**

87. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

88. Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b). Plaintiffs written consent forms will be filed contemporaneously with this Complaint on the court's docket. Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

89. At all relevant times, Defendants have been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20

U.S.C. § 203. At all relevant times, Defendants have employed and continue to employ employees, including Plaintiffs, and the Collective Class members. At all relevant times, upon information and belief, Defendants have gross operating revenues in excess of $500,000.00.

90.     The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

91.     During their employment with Defendants, within the applicable statute of limitations, Plaintiffs and the other Collective members worked in excess of forty hours per workweek without lawful overtime compensation.

92.     Despite the hours worked by Plaintiffs and the Collective members, Defendants willfully, in bad faith, and in knowing violation of the Federal Fair Labor Standards Act, failed and refused to pay them overtime compensation.

93.     Plaintiffs were not paid FLSA mandated overtime premiums uniformly and based on the policies and practices articulated above.

94.     Also, by failing to accurately record, report, and/or preserve records of hours worked by Plaintiffs and the Collective, Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of the FLSA, 20 U.S.C. § 201, et seq.

95.     Defendants have failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the Collective.

96.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

97.     Because Defendants' violations of the FLSA were willful, a 3-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

98.     Plaintiffs, on behalf of themselves and the Collective, seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
### (Failure to Pay Lawful Overtime Premiums in Violation of NYCRR § 142.2.2 and Article 19 of the NYLL)

99.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

100.    At all relevant times, Plaintiffs were employees and the Defendants have been an employer within the meaning of the New York Labor Law.

101.    The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

102.    Defendants have failed to pay Plaintiffs and the Class the overtime wages to which they were entitled under the New York Labor Law.

103.    By Defendants' failure to pay Plaintiffs and the Class Members premium overtime wages for hours worked in excess of 40 hours per week, they have willfully violated the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

104.    Also, Defendants have violated NYCRR 142-2.2 and NYLL §§ 191 and 193 by failing to pay Plaintiffs and the Class at least one and one-half times the minimum wage for all hours worked over 40 in any workweek during the class period.

105.     Due to Defendants' violations of the New York Labor Law, Plaintiffs and the Class Members are entitled to recover from Defendant their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Failure to Furnish Accurate Wage Statements in Violation of NYLL §195(3))**

106.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

107.     At all relevant times, Plaintiffs were employees and the Defendants have been an employer within the meaning of the New York Labor Law.

108.     The recording keeping provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Defendants.

109.     Defendants did not provide Plaintiffs and members of the Rule 23 Class with a legally sufficient wage statement upon the payment of wages, as required by NYLL § 195(3).

110.     NYLL §195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria required under the NYLL.

111.     As a result of Defendants' unlawful conduct, Plaintiffs and members of the Class are entitled to an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by NYLL § 663.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Failure to Furnish Accurate Wage Notices in Violation of NYLL §195(1))**

112.     Plaintiff alleges and incorporates by reference the allegations in each of the preceding paragraphs.

113.     At all relevant times, Plaintiff was an employee and the Defendants have been an employer within the meaning of the NYLL.

114. The record keeping provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants.

115. Defendants have willfully failed to supply Plaintiff with a wage notice, as required by NYLL § 195(1), containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rates or rates of pay and overtime rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, an a mailing address if different; the telephone number of the employer; plus such other information as the commission has deemed material and necessary.

116. Due to Defendants' violation of NYLL § 195(1) – failing to provide the required wage notice within 10 days of Plaintiff's hire date as required by the Wage Theft Prevention Act – Plaintiff is entitled to recover an award of damages pursuant to NYLL § 198, in an amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Lead Plaintiffs, on behalf of themselves and all members of the putative class and collective actions, prays for relief as follows:

A. That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B. That Defendants are found to have violated the provisions of the New York Labor Law as to Plaintiffs and the Class;

C. That Defendants are found to have violated the Federal Fair Labor Standards Act as to Plaintiffs and the Collective Class;

D.      That Defendants' violations as described above are found to be willful;

E.      An award to Plaintiffs and the Collective Class and Class Members for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

F.      That Defendants further be enjoined to cease and desist from unlawful activities in violation of the FLSA and NYLL;

G.      That Plaintiffs' counsel and Plaintiffs Kristin Gambell, Ramon Angeles, and Rick Zambrano can adequately represent the interests of the class as class counsel and class representative, respectively.

H.      An award of reasonable attorneys' fees and costs pursuant to the NYLL and 29 U.S.C. § 216 and/or other applicable law; and

I.      For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all issues so triable.

DATED:  May 24, 2019

Christopher Q. Davis, Esq.
The Law Office of Christopher Q. Davis
225 Broadway Suite 1803
New York, New York 10007
646-430-7930 (main)
646-349-2504 (fax)
*Counsel for Plaintiffs and the putative class*